## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FRANCES J. AMATO, in Her Own Capacity and As Next Friend of Her Minor Son, C.B.; ALANA ORR, in Her Own Capacity and As Next Friend of Her Minor Daughter, O.O-K.; GINA FUNK, in Her Own Capacity and As Next Friend of Her Minor Children, C.J.K. and J.M.K.; and JILLIAN GORDON LCSW-R, <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY McGINTY, MARIANNE MIZEL, AMY INGRAM, MARIAN COCOSE, NEW YORK DEPARTMENT OF SOCIAL SERVICES OF ULSTER COUNTY/ Child Protective Services of Ulster County, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action 1:17-cv-1280 (GLS/TWD)

## **VERIFIED COMPLAINT**

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

NOV 2 1 2017

LAWRENCE K. BAERMAN, CLERK
ALBANY

Plaintiffs – FRANCES J. AMATO (in her own capacity and as Next Friend of her minor son, C.B.), ALANA ORR (in her own capacity and as Next Friend of her minor daughter, O.O-K.), GINA FUNK (in her own capacity and as Next Friend of her minor daughter and her minor son, C.J.K. and J.M.K.), and JILLIAN GORDON, LCSW-R (in her professional capacity and as next friend of Amato, C.B., Orr, O.O-K., Funk, C.J.K. and J.M.K.) (hereafter, collectively, the "Plaintiffs") – hereby make these allegations against Defendants herein, as follows:

INTRODUCTION

Civil Rights

1.     This is a Civil Rights action brought pursuant to 42 U.S.C. §§ 1983 and 1988, and pursuant to 28 U.S.C. § 2201 *et seq.*, seeking declaratory judgment, injunctive relief and damages from Defendants, as specified in more detail below. Plaintiffs claim that Defendants, individually and/or in collusion, deprived Plaintiffs of their Civil Rights, in the course of the Plaintiff's litigations in the New York Family Court, County of Ulster (hereafter, "Family Court"), concerning Family Offense Petitions, Custody and Visitation, and the safety and well being of those Plaintiffs who are minors.

2.     Plaintiffs contend that Defendants, in a concerted effort to suppress evidence of Domestic Violence, Child Abuse, Neglect, and Endangerment allegedly committed by the natural fathers in the relevant Family Court litigations, improperly and illegally ignored, or misrepresented such evidence, and improperly and illegally denied or abridged the rights of Plaintiff Mothers, all fit parents, to custody and/or visitation with their children, in a manner that violated the Plaintiff's Civil Rights.

3.     Plaintiffs FRANCES J. AMATO, ALANA ORR, and GINA FUNK, (hereafter, collectively, the "Plaintiff Mothers") are all mothers of minor children and are litigants in Family Court. All Plaintiff Mothers have been deprived, through the actions of the Defendants, of rights to their children in a manner that violated their rights to due process of law and to equal protection under the law, as shown in more detail below.

4.     Plaintiffs C.B., O.O-K., C.J.K. and J.M.K. (hereafter, collectively, the "Plaintiff Minors") are the natural children of the Plaintiff Mothers. Their rights have been violated, and their welfare endangered, by the same conduct that violated the rights to due process of law and to equal protection under the law, of the Plaintiffs.

5.      Plaintiff JILLIAN GORDON LCSW-R (hereafter, "Plaintiff Gordon") is a Licensed Clinical Social Worker in the State of New York and psychotherapist, with a specialty in treating trauma, who, in her professional capacity, has provided services, assessments, and recommendations, and affirmed disability status in several cases, including those involving the Plaintiff Mothers and Plaintiff Minors, with regard to Family Offenses litigated in Courts in the State of New York. Plaintiff Gordon provided clinical material as to the Mental Status of the Plaintiffs in response to family violence, abuse, neglect, and endangerment and provided a context involving mental health and advocated for accommodations and treatment for the Plaintiffs. As the result of the actions of the Defendants, who wished to suppress evidence of disability and psychiatric injury to the Plaintiffs, Plaintiff Gordon was forced out of some of these cases, depriving her client's and the Plaintiffs of their rights, causing damage to the therapeutic relationship, and causing her loss of income and injury to her professional reputation.

6.      The actions of the Defendants have caused financial and professional injury to Plaintiff Gordon, subjecting her to liability from her Clients as Plaintiff Gordon is bound to the ethical standards of her profession and was not afforded the rights and privileges of her profession by the Defendants.

7.      The actions of the Defendants have deprived the Plaintiff Minors of the care and companionship of their protective parents, in violation of their rights to due process of law and equal protection under the law.

Habeas Corpus

8.      As the result of Defendants' actions, Plaintiff Minors have been unlawfully detained, in varying degrees as explained down below, into the custodial care of the natural fathers, who are manifestly unfit for such custody in violation of 28 U.S.C. § 2241(c)(3). This

statute provides that a Writ of Habeas Corpus may be issued for anyone detained, in "the district wherein the restraint complained of is had," where the detainee "is in custody in violation of the Constitution or laws or Treaties of the United States." The Plaintiff Minors' detention violates Section 1 of Amendment 13 to the United States Constitution, which prohibits such detainment by any persons anywhere in the United States. The Plaintiff Minors are detained under color of United States law to the extent that the natural fathers wrongfully Claim the right to Custody under invalid or improper Court rulings.

9.      Plaintiff Mothers' Constitutional Rights to effective counsel, submission of new evidence, protection from illegal seizure, and due process with equal protection under the Law, were violated.

Americans with Disabilities Act

10.     Defendants, through their actions, have violated the rights of the Plaintiff Mothers and Plaintiff Minors under the Americans with Disabilities Act (the "ADA"), because at no time did Defendants, despite having both the obligation and the ability to do so, attempt to offer services or accommodations to the Plaintiffs, and disrupted, interfered with or deprived Plaintiff Mothers and Minors of treatment and services in progress, despite the Plaintiff Mothers' and the Plaintiff Minors' entitlement to such services and accommodations under the ADA.

11.     For all these reasons, Plaintiffs seek relief in the form of a declaratory judgment, injunctive and damages, where appropriate, as well as an award of attorney's fees pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 2412 and 42 U.S.C. § 12205.

JURISDICTION

12.     Plaintiffs' civil rights claims arise under the United States Constitution and the laws of the United States and present a Federal question within this Court's jurisdiction under

Article III of the United States Constitution and 28 U.S.C. § 1331. The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* The Court has authority to award costs and attorney's fees under 28 U.S.C. § 2412.

13.     Plaintiffs' Habeas Corpus claims arise under Section 1 of Amendment 13 to the United States Constitution. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3). This Court may grant relief pursuant to 28 U.S.C. § 2241 and the All Writs Act, 28 U.S.C. § 1651.

14.     With respect to Plaintiffs' claims under the ADA, this Court has jurisdiction under 28 U.S.C. § 1331, and 42 U.S.C. §§ 12133 and 12188. The Court may grant declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202. The Court may grant attorney's fees pursuant to 42 U.S.C. § 12205.

PARTIES

Plaintiff Mothers

15.     Plaintiff FRANCESCA J. AMATO ("Plaintiff Amato") is a natural person and a citizen of the United States, domiciled in the State of New York, and the natural mother of Plaintiff C.B. She currently has a confidential address provided by New York State. For the purposes of this action, her address for service is [P.O. Box 1111 Albany, New York, confidentiality program]. Plaintiff Amato suffers from Post-Traumatic Stress Disorder caused by the actions of the paternal parent of C.B., and also as a consequence of the mistreatment by Defendants.

16.     Plaintiff Gordon provided expert witness testimony in Ulster County Family Court in January of 2017, affirming Plaintiff Amato's disability and mental status.

17.     Plaintiff ALANA ORR ("Plaintiff Orr") is a natural person and a citizen of the United States, domiciled in the State of New York, and the natural mother of Plaintiff O.O-K. She currently has a confidential address provided by New York State. For the purposes of this

action, her address for service is [P.O. Box 358, Lake Katrine, NY 12449]. Plaintiff Orr

suffers from Post-Traumatic Stress Disorder caused by the paternal parent, and maternal

grandparents of O.O-K., and also as a consequence of the mistreatment by the Defendants.

18.     Plaintiff GINA FUNK ("Plaintiff Funk") is a natural person, a German Citizen

and permanent resident in the State of New York, and the mother of Plaintiffs C.J.K. and

J.M.K. She currently has a confidential address provided by New York State. For the

purposes of this action, her address for service is [14 Library Lane, Woodstock, NY 12498].

Plaintiff Funk suffers from Post-Traumatic Stress Disorder caused by the actions of the

paternal parent and paternal grandmother of C.J.K and J.M.K., and also as a consequence of

the mistreatment by the Defendants.

19.     Plaintiff Mothers represent Plaintiff Minors herein, as next friend, pursuant to

Rule 17(c)(1)(A) of the Federal Rules of Civil Procedure and such precedents as *Ad Hoc*

*Committee of Concerned Teachers v. Greenburgh #11 Union Free School District*, 873 F.2d

25 (2nd Cir., 1989) and *Sam M. ex rel. Elliott v. Carciere*, 608 F.3d 77 (1st Cir., 2010); Plaintiff

Mothers are the natural parents of the Plaintiff Minors, as detailed herein; their parental rights

have never been terminated and as parents they have a strong interest in the Plaintiff Minors'

welfare.

Plaintiff Minors

20.     Plaintiff C.B. is a natural person, a citizen of the United States, and the minor

son of Plaintiff Amato, born out of wedlock. Plaintiff C.B. was diagnosed by an LCSW-R in

Orange County, NY in 2016 and met criteria for a disabling psychiatric condition in addition

to suffering psychiatric injury or trauma over the course of litigation in Family Court.

Plaintiff C.B. has been in the sole custody of Plaintiff Amato since October 2017, and resides

within the State of New York.

21.     Plaintiff Gordon made a report to State Central Registry for suspicion of neglect and molestation of Plaintiff C.B., as Plaintiff C.B. had disclosed that a same age paternal cousin had been touching him inappropriately in the custody of his father.

22.     Plaintiff O.O-K. is a natural person, a citizen of the United States, and the minor daughter of Plaintiff Orr, born out of wedlock. Plaintiff O.O-K. was diagnosed with Post Traumatic Stress Disorder and Acute Stress Reaction by Plaintiff Gordon. Plaintiff O.O-K is currently detained in the custody of her paternal parent and her maternal grandparents within the State of New York.

23.     Plaintiff Gordon made a Report to State Central Registry with suspicion of physical and emotional abuse of O.O-K. on a Visitation Order with her father.

24.     Plaintiffs C.J.K. and J.M.K. are natural persons, citizens of the United States, and the minor children of Plaintiff Funk, born out of wedlock. Plaintiffs C.J.K and J.M.K. are symptomatic of psychiatric trauma attributed to Domestic Violence and abuse. Plaintiff Minors are currently detained in the custody of their paternal parent, within the State of New York.

### Plaintiff Gordon

25.     Plaintiff JILLIAN GORDON, LCSW-R is a natural person and a citizen of the United States, domiciled in the State of New York, pleading herein in her professional capacity as a Licensed Clinical Social Worker in the State of N.Y. her business address is Jillian Gordon, LCSWR, DBA Looking Glass Psychotherapy, 159 Green Street, Suite 23, Kingston, NY 12401.

### Defendant Judges

26.     Defendant ANTHONY McGINTY (hereafter, "Defendant McGinty") is a natural person, a citizen of the United States, and a Judge of the New York Family Court,

County of Ulster. His business address is Family Court, County of Ulster, 16 Lucas Avenue,

Kingston, NY 12401. His personal address is P.O. Box 400, Rosendale, NY 12472. He is

sued herein in his official capacity.

27.     Defendant MARIANNE MIZEL (hereafter, "Defendant Mizel") is a natural

person, a citizen of the United States, and a Judge of the New York Family Court, County of

Ulster. Her business address is Family Court, County of Ulster, 16 Lucas Avenue, Kingston,

NY 12401. Her personal address is 99 Hardenburgh Road, Ulster Park, NY 12487. She is

sued herein in her official capacity.

Defendant's Attorney for Children

28.     Defendant AMY INGRAM (hereafter, "Defendant Ingram") is a natural

person, a citizen of the United States, and an attorney who functioned as court-appointed

Attorney for the Child for the minor children, Plaintiffs C.B. and O.O-K. Her business

address is Ingram Law Firm, 159 Green Street #1, Kingston, NY 12401.

29.     Defendant MARIAN COCOSE (hereafter, "Defendant Cocose") is a natural

person, a citizen of the United States, and an attorney who functioned as court-appointed

Attorney for the Plaintiff Minors C.J.K. and J.M.K. Her business address is 48 W. Ohayo

Mountain Road, Bearsville, NY 12409.

Defendant Department of Social Services

30.     Defendant NEW YORK DEPARTMENT OF SOCIAL SERVICES, ULSTER

COUNTY (hereafter, "Defendant DSS") is a governmental entity of Ulster County, State of

New York. Its business address is 1061 Development Court, Kingston NY 12401. It is a

recipient of federal financial assistance.

FACTUAL ALLEGATIONS

31.     The relevant facts of this matter are set forth below.

Plaintiff Amato and Plaintiff C.B.

32.    Plaintiff Amato is the natural mother of Plaintiff C.B.

33.    Originally, Defendant Mizel was the presiding Judge in Plaintiff Amato's custody litigation under the caption *Amato v. Beesmer*, File No. 21962. However, after Defendant Mizel recused herself, the litigation recommenced before Defendant McGinty in 2016. Defendant Ingram was Attorney for the child in the relevant custody litigation held in Family Court.

34.    Plaintiff Amato and Plaintiff C.B. are both victims of Domestic Violence and suffer from Post Traumatic Stress Disorder, Anxiety Disorder and Acute Stress Disorder due to Defendants' actions and the paternal parent's abusive, belligerent and violent behavior. The paternal parent is a drug addict, an alcoholic and a convicted criminal; he has several indications on his driving record of offenses for driving under the influence of alcohol. In addition, the paternal parent has filed five (5) false CPS reports against Plaintiff Amato. (Not one has ever been ruled "indicated.")

35.    Defendant DSS received information clearly indicating the likelihood that C.B. had been abused by the paternal parent. Nevertheless, DSS negligently or willfully failed to protect C.B. and conspired with other Defendants to transfer custody of C.B. from Plaintiff Amato to the paternal parent, despite manifest evidence of the paternal parent's abuse of C.B. and unfitness for custody, and despite the absence of any evidence challenging Plaintiff Amato's fitness as a custodial parent.

36.    Due to the concerted actions of Defendants, in October 2016 the paternal parent was awarded sole legal and physical custody of Plaintiff C.B. by Family Court Defendants. Plaintiff Amato was not present for many of the relevant court hearings, in significant part because she did not receive actual notice of the hearings before Defendant

McGinty. In addition, Plaintiff Amato suffered from Post-Traumatic Stress Disorder which, through the actions of Defendants, was exacerbated whenever Plaintiff Amato was forced to attend a court hearing.

37.     According to the October 2016 custody order of Family Court, Plaintiff Amato, the primary caretaker of Plaintiff C.B. up until that point, was granted only supervised visitation, and that only once per week for a minimum of two (2) hours.

38.     The evidentiary hearing legally required in order for Family Court to issue an order resolving Plaintiff C.B.'s custody was never held. No other proceeding held in Family Court ever constituted the legally-required hearing, with proper notice and on the basis of proper and competent evidence, in prompt and timely fashion.

39.     With the cooperation of other Defendants, Defendant McGinty wrongly and illegally sought to jail Plaintiff Amato for contempt of court; ultimately, the order to such effect was reversed on appeal.

40.     After Plaintiff C.B. was placed in the paternal parent's custody, the paternal parent was repeatedly incarcerated, exposing C.B. to further harm, calling into question where C.B. could possibly be living in any conditions of safety, and further demonstrating the paternal parent's unfitness for custody of Plaintiff C.B. Nevertheless, Defendants McGinty, DSS and Ingram failed and refused to take any corrective action, and Defendant McGinty refused to entertain Plaintiff Amato's emergency applications to have C.B.'s custody restored to Plaintiff Amato.

41.     Throughout the above proceedings, Defendant Ingram failed to carry out her legally required duties to her minor client, Plaintiff C.B., with the result that she advocated and supported measures, in concert with Defendants McGinty and Mizel, that were harmful

and detrimental to her minor client, Plaintiff C.B., and violated the parental and procedural rights of Plaintiff Amato.

42.    Defendants were aware of the paternal parent's criminal history and history of Domestic Violence. Nevertheless, Defendants orchestrated the change of Plaintiff C.B.'s custody from Plaintiff Amato, (who had always been primary caregiver), to the paternal parent. Defendants knew, or should have known, that in doing so Defendants endangered and undermined the safety and well-being of Plaintiff C.B. and deprived Plaintiff Amato of her right to due process of law and of equal protection of the laws.

43.    Defendants also discriminated against Plaintiff Amato due to her membership in a disfavored class – namely, protective parents attempting to shield their children from abuse by the other parent – thus depriving Plaintiff Amato of equal protection of the laws.

44.    In addition, Defendants failed to provide or offer appropriate services or accommodations to Plaintiff Amato and Plaintiff C.B., despite knowing of their disability and the need for such services and/or accommodations.

45.    On September 12, 2017, due to the paternal parent's continuing incarceration, Family Court awarded an Order of Temporary Custody of Plaintiff C.B. to Plaintiff Amato. Upon information and belief, this temporary order was intended to last until a trial of the matter was heard before Family Court, which was held in October 2017, which resulted in Family Court awarding custody of Plaintiff C.B. to Plaintiff Amato. Although this puts to rest the immediate threat to the safety of Plaintiff C.B., the fact remains that the consequences of the actions of the Defendants threatened for an extended period of time the safety of Plaintiffs Amato and C.B., and caused continuing psychological trauma.

Plaintiff Orr and Plaintiff O.O-K.

46.    Plaintiff Orr is the natural mother of Plaintiff O.O-K, her minor daughter.

47.    Plaintiff Orr was engaged in Family Court litigation concerning Custody, Visitation, and Plaintiff Orr's Family Offense petitions seeking orders of protection for herself and Plaintiff O.O-K., starting in 2013. The judge was Defendant Mizel who initially presided over the litigation captioned *Orr v. Kehoe et al.*, Family Court, Ulster County, Docket Nos.: V-3637-13-17AJ and AK. Defendant Mizel recused herself in March/April 2016 without explanation before Plaintiff Orr was able to present her testimony in trial. Defendant McGinty then resumed trial in complete absence of all subject matter jurisdiction in violation of NY JUD Section 21, after the decision to seize custody from Plaintiff Orr was made upon oral argument only, during the arraignment for Plaintiff Orr's first family offense petition in the litigation. Defendant Ingram is the Attorney for the Child for Plaintiff O.O-K..

48.    Plaintiff Orr lost Custody of her Minor child on August 20, 2015, and lost visitation with Plaintiff O.O-K. after December 25th, 2015. A trial on child Custody commenced in February 2016, Plaintiff Orr having asserted serious allegations against the paternal parent, including Domestic Violence in the presence of the child and abuse of Plaintiff O.O-K. The paternal parent disputed O.O-K 's custody with Plaintiff Orr in litigation, despite paternal parents history of Child Abuse and Domestic Violence

49.    On August 20th, 2015, During an arraignment for a family offense petition filed by Plaintiff Orr on behalf of Plaintiff O.O-K against the paternal parent, Defendant Mizel gave full and sole custody to non-parents without an an evidentiary hearing as to guardianship and costoddianship/.

50.    On August 20th, 2015,Defendant Mizel then issued an Order of Protection against Plaintiff Orr, in application of paternal grandparents' counsel - barring Plaintiff Orr from contact with Plaintiff O.O-K, and depriving Plaintiff Orr of her parental and legal rights regarding medical, legal, religious and educational decisions.

51.     Plaintiff Orr and Plaintiff O.O-K. suffer domestic abuse by the paternal parent. As a result of that abuse, and also caused by the mistreatment of the Defendants, Plaintiff Orr suffers from Post-Traumatic Stress Disorder and other related psychological traumas which were exacerbated by Family Court proceedings. These are facts known or should have been known to Defendants, who failed to accommodate Plaintiff Orr's disability, in violation of ADA laws.

52.     Plaintiffs O.O-K. suffers from Post-Traumatic Stress Disorder, and was removed from Plaintiff Gordon's care with acute symptoms of trauma and placed with a provider with less credentials to assess and treat trauma. Plaintiff Orr was prevented from seeking appropriate treatment for Plaintiff O.O-K. for these conditions by the Defendants.

53.     Family offenses, including physical, sexual and emotional abuse against Plaintiff Orr and/or Plaintiff O.O-K. were reported to the authorities, including to Defendant DSS, law enforcement, and family court. Defendant DSS, law enforcement, Defendant Mizel, Defendant McGinty, Defendant Ingram, court appointed attorneys, the court affiliated therapist, the physicians, the school psychologist, teachers or principal either did not conduct a proper investigation or did not report suspicion of abuse.

54.     Plaintiff Orr was denied effective Counsel through court-appointed attorneys who denied Plaintiff Orr submission of evidence of abuse. Plaintiff Orr was coerced by counsel that seizure of her custodial rights and Plaintiff O.O-K. would be placed in foster care, should Plaintiff Orr continue to allege that Plaintiff O.O-K.'s safety and well being is at risk under the current court-order in place.

55.     Defendant McGinty dismissed all of Plaintiff Orr's family offense petitions without reasonable cause or explanation. During litigation, Defendant McGinty then told Plaintiff Orr that he would not entertain any further petitions she submitted as long as she was

being represented by counsel. Plaintiff Orr elected to proceed pro se temporarily to file a family offense petition; Defendant McGinty then denied Plaintiff Orr her right to assigned counsel, thus denying Plaintiff Orr's rights to due process and equal protection under the law, and making it impossible for Plaintiff Orr to present her case.

56.     On August 8th, 2016, signed an order of protection against the paternal parent. In the absence of Plaintiff Orr. Defendant McGinty being fully aware or should have been fully aware of the risks involved, when ordering Plaintiff O.O-K. into the custodial care of the maternal grandparents, unsupervised visitation time with the paternal parent, and limiting plaintiff Orr's contact with Plaintiff Orr from 15 minute daily phone calls to 5 min daily phone calls with Plaintiff O.O-K. The actions of the defendants deny Plaintiff Orr of her natural parental rights to her child.

57.     On September 28, 2016 Defendant McGinty issued an order of protection "upon default" in the absence of Plaintiff Orr, barring Plaintiff Orr from all contact with Plaintiff O.O-K. giving joint legal custody to the maternal grandparents and the paternal parent, and restricting Plaintiff Orr from any and all contact with Plaintiff Minor with an Order of protection further extending the effect of the order of protection beyond the expiration date. The actions of the defendants deny Plaintiff Orr all of her natural parental rights.

58.     Defendant McGinty thrice denied Plaintiff Orr's pleas to vacate the default, making it impossible for Plaintiff Orr to present her case. Plaintiff Orr has been charged with violating the Order of Protection Upon Default, causing her to incur costs, loss of driving privileges, inconvenience and emotional distress, and faces criminal penalties.

59.     In Spring 2017, Plaintiff Orr sought modification of custody, alleging that she provided a safer environment for Plaintiff O.O-K., who suffers from emotional trauma.

Plaintiff Orr also expressed concern about possible acts of abuse by the paternal parent, against O.O-K., as well as Domestic Violence against Plaintiff Orr herself.

60.   Evidence presented to Family Court in Plaintiff Orr's modification petition demonstrated that: 1) the paternal parent was evicted from his dwelling in May 2017 and currently had no known residence, so that O.O-K. apparently had no safe place to reside with him; and 2) O.O-K. had been pushed by a paternal relative during a visit with the paternal parent "and cut her lip which required 6 stitches in the ER," and was engaging in disturbing behaviors as per maternal grandparents.

61.   Defendant DSS/CPS was aware of Plaintiff Orr's status as a Domestic Violence survivor and received and investigated allegations of abuse of O.O-K., an investigation which included an examination by the SANE nurse at Kingston Hospital resulting in a diagnosis of possible sexual abuse. Nevertheless, Defendant DSS/CPS negligently and willfully failed to protect Plaintiff O.O-K. and conspired with other Defendants to transfer custody of Plaintiff O.O-K. from Plaintiff Orr to the paternal parent, despite manifest evidence of his unfitness for custody, and despite the absence of any evidence challenging Plaintiff Orr's fitness as the custodial parent. The Defendants conspired to suppress this evidence.

62.   Defendants Mizel, McGinty and Ingram, knew or should have known of the evidence of the domestic violence, child abuse, neglect and endangerment perpetrated by the paternal parent against Plaintiff Orr and Plaintiff O.O-K., and the threat to the Plaintiff O.O-K.'s welfare if the paternal parent was given unsupervised visitation or any overnight custodial time. Defendants despite the absence of evidence presented to challenge Plaintiff Orr's fitness as the custodial parent, conspired to suppress this evidence, and orchestrated in a series of orders to punish Plaintiff Orr and Plaintiff O.O-K.

63.     Throughout these proceedings, Defendant Ingram failed to carry out her legally required duties to her minor client, Plaintiff O.O-K., with the result that she advocated and supported measures, in concert with Defendants Mizel and McGinty , that were harmful and detrimental to her child client and violated the parental and procedural rights of Plaintiff Orr.

64.     Defendant McGinty, with the support of Defendant Ingram, denied Plaintiff Orr's petition for modification, ignoring the evidence Plaintiff Orr presented and refused to hold the legally required evidentiary hearing into these issues.

65.     Throughout the above proceedings, Defendant Ingram failed to carry out her legally required duties to her minor client, Plaintiff O.O-K., with the result that she advocated and supported measures, in concert with Defendants Mizel and McGinty, that were harmful and detrimental to her minor client, Plaintiff O.O-K., and violated the parental and procedural rights of Plaintiff Orr.

66.     Defendants were aware of the paternal parent's criminal history and history of Domestic Violence. Nevertheless, Defendants orchestrated the change of Plaintiff O.O-K.'s custody from Plaintiff Orr, (who had always been primary caregiver), to the paternal parent. Defendants knew, or should have known, that in doing so Defendants endangered and undermined the well-being and safety of Plaintiff O.O-K. and deprived Plaintiff Orr of her right to due process of law and equal protection under the law

67.     Defendants also discriminated against Plaintiff Orr due to her membership in a disfavored class – namely, protective parents attempting to shield their children from abuse by the other parent - thus depriving her of equal protection of laws.

68.     In addition, Defendants failed to provide or offer appropriate services or accommodations and interfered and disrupted services already provided to Plaintiff Orr,

despite knowing that she suffers from Post-Traumatic Stress Disorder and of her need for such services and/or accommodations.

69.     Plaintiff O.O-K. is currently detained away from Plaintiff Orr, by virtue of Defendants' actions, on the strength of Family Court's custody order.

70.     As a result of Defendants' actions, Plaintiff O.O-K. now faces a continuing risk of imminent harm.

Plaintiff Funk and Plaintiffs C.J.K. and J.M.K.

71.     Plaintiff Funk is the natural mother of Plaintiffs C.J.K and J.M.K, her minor daughter and minor son.

72.     Plaintiff Funk was engaged in custody litigation in Family Court concerning Plaintiff Funk's original Family Offense Petition filed in Family Court, on April 3, 2014 seeking an Order of Protection for herself and for minor Plaintiffs C.J.K. and J.M.K. while in Shelter as a Domestic Violence survivors. The presiding Judge was Defendant McGinty, who then moved to proceed to custody related litigation, captioned *Funk v. Kennoch*, Family Court of New York, Ulster County, Docket Nos. V-00908-14 and V-00909-14. Defendant Cocose was Attorney for the Child for Minor Plaintiffs    C.J.K. and J.M.K.,in the relevant custody litigation held in Family Court.

73.     Plaintiff Funk and Plaintiffs C.J.K and J.M.K. suffered domestic abuse by the natural father of C.J.K and J.M.K.. As a result of the natural father's abuse, and the mistreatment of the Defendants. Plaintiff Funk suffers from Post-Traumatic Stress Disorder and other related psychological traumas which were exacerbated whenever Plaintiff Funk was/and is continually forced to attend Court hearings. Plaintiff Funk receives appropriate psychotherapy for these conditions. Plaintiffs C.J.K. and J.M.K. suffer from undiagnosed psychological traumas, for relief of which Plaintiff Funk sought to engage proper

psychotherapy, which the natural father objected to, and ultimately removed Plaintiff C.J.K. and J.M.K. from multiple treatments.

74.     Defendants McGinty and Cocose, conspired to suppress evidence presented during litigation, failing to protect the Plaintiff's safety, and despite being aware of, or should have been aware of the allegations of drug addictions and domestic abuse perpetrated by the natural father against Plaintiffs Funk, C.J.K and J.M.K, despite being aware or should have been aware of the risk to her minor client's safety and welfare if the natural father retained any substantial overnight custodial time of Plaintiff Minors C.J.K. and J.M.K., or had any significant amounts of unsupervised visitation with Plaintiff Minors C.J.K. and J.M.K, despite the absence of any challenging evidence of Plaintiff Funk's fitness as the ability to be the primary custodial parent of the Plaintiff Minors C.J.K. and J.M.K.. Defendant McGinty orchestrated a series of harsh punishments to Plaintiffs Funk, C.J.K. and J.M.K.. Defendant McGinty refused to acknowledge evidence of a personal bias and conflict of interest in this matter, based on a close working relationship with the natural father's mother. Defendant McGinty refused to recuse himself as the presiding Judge, and denied Plaintiff Funk's motion seeking his recusal, falsely denying the extent of their relationship.

75.     Defendants DSS and CPS transferred Plaintiff Funk's Social Services Case and Crime Victims Assistance Case as a temporarily disabled survivor of Domestic Violence to Green County DSS/CPS to satisfy Plaintiff Funk's Motion seeking recusal, as the paternal grandmother of the natural father is an Ulster County employee and a paternal sibling of the natural father is employed by Ulster County CPS.

76.     Plaintiff Funk was the primary caregiver for Plaintiff Minors C.J.K. and J.M.K., until Defendant McGinty, in a series of Orders, awarded the natural father considerable custodial time in 2014 to three unsupervised nights a week while Plaintiff Funk

and Plaintiffs C.J.K. and J.M.K. were residing in the local Domestic Violence shelter, and she was obligated to place the Plaintiff Minors in a Public School. Defendants failed to protect Plaintiff Funk and her children, by disclosing confidentiality as to Shelter and Plaintiff C.J. K. and J.M.K.'s schools, and failed to enforce the Orders of Protection on the original Family Offense Petition filed by Plaintiff Funk.

77.      During the fact-finding proceeding in that matter in 2015, Defendant McGinty, supported by Defendant Cocose, repeatedly and knowingly worked with the paternal parent's counsel to achieve results detrimental to Plaintiff Funk and the relationship between Plaintiff Funk and her Plaintiff children.

78.      Plaintiff Funk appeared at all court hearings and trial dates that she had been properly notified of, during which she offered testimony and was cross-examined. In the last proceeding in which Plaintiff Funk offered testimony she invoked her 5th Amendment rights, and Defendant McGinty and the natural father's counsel openly attempted to penalize Plaintiff Funk, as evidenced by Transcripts from the proceedings.

79.      Plaintiff Funk was anticipating her continued testimony in trial and had witnesses to call. She had a Federal Court appointment with Immigration and Naturalization Services. Plaintiff Funk advised Family Court accordingly asking for an adjournment and was denied by Defendant McGinty. Defendant McGinty again, proceeded in Plaintiff Funk's absence and allowed testimony from the paternal parent and paternal grandmother.

80.      On July 14th Acting *sua sponte*, Defendant McGinty – with the cooperation of Defendant Cocose – imposed extremely harsh and unwarranted penalties, striking all of Plaintiff Funk's testimony. **Defendant** McGinty had prompted the natural father's counsel off the record to request – and Defendant McGinty then granted – an extreme inference against Plaintiff Funk because she had invoked her 5th Amendment Rights.

81.     On July 16th, 2015, Defendant McGinty, again with the connivance and support of Defendant Cocose, punished Plaintiff Funk further by granting sole physical and legal custody to the natural father, and severely restricting Plaintiff Funk's parenting time to eight hours on Sundays. Defendant McGinty further denied Plaintiff Funk's modification petition for the safe transfer of Plaintiffs C.J.K. and J.M.K.. This restriction on Plaintiff Funk and Plaintiff C.J.K. and J.M.K. was excessive and illegal under the circumstances. Further, the enhancement of the paternal parent's custodial rights exposed the children and Plaintiff Funk to further harm. This fact was known or should have been known to Defendants McGinty and Defendant Cocose, who nevertheless supported these harsh court orders and suppressed evidence of possible harm posed to Plaintiffs Funk, C.J.K. and J.M.K..

82.     In particular, Plaintiff Funk was denied due process of law by the wrongful striking of her testimony, which made it impossible for her to present her case in Ulster County Family Court and in the Appellate Division Third Department State of New York .

83.     Defendants McGinty and Cocose knew, or should have known, that in removing the custodial rights of Plaintiff Funk, who had always been the primary caretaker of Plaintiffs C.J.K. and J.M.K, endangered and compromised the safety and well-being of the Plaintiff Minors, and deprived Plaintiff Funk  of her parental legal rights, regarding the medical, legal, religious and educational decisions of her cildren.

84.     Plaintiff Funk was denied effective counsel, as assigned attorneys and DSS/ CPS made threats as to Plaintiff Funk losing Custodial rights

85.     Throughout the above proceedings, Defendant Cocose failed to carry out her legally required duties to her minor client, Plaintiff C.J.K. and J.M.K., with the result that she advocated and supported measures, in concert with Defendant McGinty, that were harmful

and detrimental to her minor clients, Plaintiff C.J.K. and J.M.K, and violated the parental and procedural rights of Plaintiff Funk.

86.     Plaintiff Funk has in fact lost Custodial rights to Plaintiffs C.J. K. and J.M. K. as a Domestic Violence survivor and since has had her Civil Rights continuously violated with seizure of her bank accounts, driving privileges and her Passport, and sanctions and liens placed against her by Defendant DSS, on the power of a Child Support Order for Plaintiff Funk to pay her abuser.

87.     Defendants McGinty were aware of or should have been aware of the natural fathers's criminal history, drug addictions and history of Domestic Violence. Nevertheless, Defendants orchestrated the change of Plaintiff C.J.K. and J.M.K.'s custody from Plaintiff Funk, (who had always been primary caregiver), to the natural father. Defendants knew, or should have known, that in doing so Defendants endangered and undermined the well-being and safety of Plaintiff C.J.K. and J.M.K. and deprived Plaintiff Funk of her right to due process of law

88.     Defendants also discriminated against Plaintiff Funk due to her membership in a disfavored class – namely, protective parents attempting to shield their children from abuse by the other parent, and as permanent resident– thus depriving her of equal protection of American laws.

89.     In addition, Defendants failed to provide or offer appropriate services or accommodations to Plaintiff Funk, and Plaintiffs C.J.K. and J.M.K., despite knowing that she suffers from Post-Traumatic Stress Disorder and the children remained without proper psychiatric support, with the need for such services and/or accommodations.

90.     Plaintiffs C.J.K. and J.M.K. are currently detained away from Plaintiff Funk, by virtue of Defendants' actions, on the strength of Family Court's Custody Orders in a Family Offense Petition.

91.     As a result of Defendants' actions, Plaintiffs C.J.K. and J.M.K. now face a continuing risk of imminent harm that is not in the best interest of the children.

Plaintiff Gordon

92.     Plaintiff Gordon, a Licensed Clinical Social Worker in the State of New York and psychotherapist, has been repeatedly harmed professionally by Defendants in retaliation for Plaintiff Gordon's good-faith belief that children she is treating have been abused or are witnesses to Family Violence, constituting psychological abuse. Because of this, Defendants have ensured the removal of several such clients from Plaintiff Gordon's care, thus harming Plaintiff Gordon and endangering the welfare of the minor children involved.

93.     A client of Plaintiff Gordon (hereafter, "Gordon Client 1"), was involved in custody litigation in Family Court. Gordon Client 1's minor child was in treatment with Plaintiff Gordon. The child had not seen her father for five years prior to treatment with Plaintiff Gordon, because the child credibly alleged that her father had molested her.

94.     Defendant Cocose was Attorney for the Child for the minor child of Gordon Client 1 in Family Court.

95.     Plaintiff Gordon believed that Gordon Client 1's child's allegations of abuse were credible, were made in good faith, and should be taken seriously in the Family Court proceedings.

96.     Defendant Cocose, although aware of the abuse allegations and of Plaintiff Gordon's substantiation of them, called Plaintiff Gordon by telephone, stating that the child in

question, then thirteen (13) years old, had no rights in Family Court and would not have the opportunity to testify in custody proceedings.

97.     Defendant Cocose improperly arranged for the child to be placed with a particular services provider, although the child should not have qualified for that provider's services due to her age. Upon information and belief, Defendant Cocose is on the Board of Directors of that provider..

98.     Defendant Cocose also pressured the child's prescribing psychiatrist to terminate prescribed medications for the child, thus placing the child at risk.

99.     Through the actions of Defendants Cocose and McGinty, Plaintiff Gordon was removed from the case, in which she had been providing therapeutic services.

100.    As a result, Plaintiff Gordon suffered financial loss and harm to her professional reputation.

101.    Plaintiff Gordon has also received threats from the child's father, through both emails and telephone calls.

102.    In another case, Plaintiff Gordon provided services to a client (hereafter, "Gordon Client 2"), a minor child. The Client 2 was in a Visitation Order to visit her father and older sister had been in father's custody with Gordon Client 2, then five years old, had bruises all over her body on a regular basis, and Client 2 reported that her father (and his mother) were hitting her. Accordingly, Plaintiff Gordon made a report of suspected abuse to New York's State Central Registry, as required by state law.

103.    Defendant Mizel did not consult with mental health providers following the report and continued a Visitation Order for Gordon Client 2, and her older sibling was denied contact with mother and continued in the custody of her father, despite the evidence of father's abuse, and the child's severe psychopathology. as well as the father's history of

sexual abuse (specifically, of statutory rape). Upon information and belief, the father is registered in New York State as a "Tier 3" sex offender.

104.   Defendant Mizel in Family Court openly referred to Plaintiff Gordon as a "liar" when mother asserted the need for continued Play Therapy for Client 2 and transferred Client 2 from Plaintiff Gordon's care to another clinician. Defendant Mizel to Plaintiff Gordon regarding the Mental Health treatment involved and about the case, because of her reports of the evidence of physical abuse by the father. As a result of Defendant Mizel's actions, Gordon Client 2 was removed from Plaintiff Gordon's care, causing Plaintiff Gordon financial loss and harm to her professional reputation.

105.   Plaintiff O.O-K. was in psychotherapy with Plaintiff Gordon until transferred to Grunblatt Psychology, LLC to a less credentialed provider as Plaintiff Gordon had made Reports to State Central Registry on suspicion of abuse and neglect of O.O-K. while in the custody of Plaintiff's father and maternal grandparents.

## CLAIMS FOR RELIEF

### Civil Rights (42 U.S.C. § 1983)

106.   Plaintiffs repeat and reallege paragraphs 1-110 above as if fully set forth herein.

I.     Injunctive/Declaratory Relief

107.   Defendants Mizel and McGinty, as judges of Family Court, violated the rights of Plaintiffs Amato, Orr, C.B. and O.O-K. – and Defendant McGinty also violated the rights of Plaintiffs Funk, C.J.K. and J.M.K. by depriving them, through their rulings and actions as Family Court judges, of due process of law. Plaintiffs Orr and Amato had their custody rights impaired or rescinded without a legally required hearing, on notice to Plaintiffs, at which competent evidence as adduced. Plaintiff Funk was denied her right to present her case at an

evidentiary hearing through the wrongful striking of her testimony. Other violations of Plaintiff Mother's due process rights occurred as well. All Plaintiff Minors had their right the companionship and custody of their natural mothers impaired due to these actions.

108.     Defendants also conspired to harm and malign Plaintiff Gordon in violation of her right to due process of law.

109.     Defendants Mizel, McGinty and DSS performed the aforesaid actions under color of state law.

110.     In their professional capacities as judges of Family Court, Defendants Mizel and McGinty are not shielded from prospective relief in the form of declarative and/or injunctive relief by any doctrine of immunity.

111.     Defendant DSS, and Defendants Ingram and Cocose in the cases in which they were involved – Ingram in the cases of Plaintiffs Amato and Orr, Cocose in the case of Plaintiff Funk – knowingly colluded with the judges (Defendants Mizel and McGinty) in their illegal actions, contributing to the deprivation of Plaintiffs' right to due process of law.

112.     Defendants DSS, Ingram and Cocose are not protected, in their official capacities, by any doctrine of immunity.

113.     Defendant DSS acted under color of state law, as a governmental entity of Ulster County, New York. Defendants Ingram and Cocose acted under color of state law to the extent they conspired with "state actors" McGinty, Mizel and the DSS in the aforesaid actions.

114.     Accordingly, Defendants violated Plaintiffs' right to due process of law under the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983.

115.     Plaintiffs Amato, Orr and Funk belong to a disfavored class— namely, protective parents attempting to shield their children from abuse by the other parent

116.    The actions of the Defendants denied to these Plaintiffs, as members of a class as aforesaid, the protection of the law available to others similarly situated who are not members of the class as aforesaid.

117.    The actions of the Defendants violated Plaintiffs' right to equal protection under the law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

118.    The Defendants knew or should have known that the actions taken by them in depriving Plaintiffs of their right to due process of law, and to equal protection of the laws, were illegal and in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

119.    As a result of the actions of the Defendants, Plaintiffs Amato, Orr, Funk, C.B., O.O-K., C.J.K. and J.M.K. suffered a loss of justice, emotional and psychological trauma, and further exposure to the danger of future assaults.

120.    As a result of the actions of Defendants, Plaintiff Gordon suffered a loss of justice, loss of income and damage to her professional reputation.

121.    The actions of the Defendants were without a reasonable basis under the circumstances.

122.    As a result of the Defendants' actions, Plaintiffs suffered irreparable harm.

123.    Plaintiffs are entitled to a declaratory judgment, pursuant to 28 U.S.C. § 2201 *et seq.*, to the effect that the Defendants' actions were illegal and violative of Plaintiffs' right to due process of the law and, in the case of Plaintiff Mothers, to equal protection of the laws.

124.    Defendants' actions caused the Plaintiff Mothers and Plaintiff Minors irreparable harm that cannot be adequately be redressed by money damages.

125.    Plaintiffs are entitled to an injunction barring Defendants from continuing their illegal acts, as aforesaid.

II.    Monetary Damages

126.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 to 130 above as if set forth at length herein.

127.    The actions of the Defendants, as set forth above, violated the Plaintiffs' civil rights and caused damages to them.

128.    Defendants Ingram, Cocose and DSS are not protected from an action for damages by any doctrine of immunity. These Defendants knew, or should have known, that their actions deprived Plaintiff Mothers and Plaintiff Minors of their rights under the law.

129.    The damages of Plaintiff Mothers and Plaintiff Minors, collectively, are in an amount as yet to be determined, but in no event less than TWENTY MILLION DOLLARS ($20,000,000). Defendants Ingram, Cocose and DSS are jointly and severally liable to Plaintiff Mothers and Plaintiff Minors for the damages suffered. Thus, they are liable to Plaintiff Mothers and Plaintiff Minors, jointly and severally, in an amount as yet to be determined, but in no event less than TWENTY MILLION DOLLARS ($20,000,000).

130.    As the result of the actions of Defendants Mizel, McGinty, Cocose and DSS, Plaintiff Gordon financial loss and harm to her professional reputation.

131.    The damages suffered by Plaintiff Gordon are in an amount as yet to be determined, but in no event less than ONE MILLION DOLLARS ($1,000,000). Defendants Mizel, McGinty, Cocose and DSS are jointly and severally liable to Plaintiff Gordon for the damages suffered. Thus, they are liable to Plaintiff Gordon, jointly and severally, in an amount as yet to be determined, but in no event less than ONE MILLION DOLLARS ($1,000,000).

Americans with Disabilities Act

132.    Plaintiffs repeat and reallege paragraphs 1-136 above as if fully set forth herein.

133.    Defendants violated the rights of Plaintiff Mothers under the Americans with Disabilities Act ("ADA") by failing and refusing to offer them appropriate services and accommodations in the litigation aforesaid. Defendants knew or should have known that Plaintiff Mothers qualified for such services and accommodations under the ADA.

134.    Defendants acted on assumptions and sex-based stereotypes about Plaintiff Mothers' disabilities; and failed to individually analyze what services and supports would be appropriate considering those disabilities. Defendants refused to provide appropriate individualized treatment and accommodations necessary to ensure that Plaintiff Mothers had full and equal opportunity to court proceedings to which Plaintiff Mothers' parental rights and children's custody were at issue.

135.    As a result of Defendants' discriminatory practices, Plaintiff Mothers' custodial rights were impaired.

136.    Defendants' actions, inactions, and omissions violate Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35; Title III of the ADA, 42 U.S.C. § 12181 *et seq.*, and its implementing regulation at 28 C.F.R. Part 36; and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

137.    This matter raises an issue of general public importance.

138.    The actions of the Defendants caused damages to Plaintiff Mothers and Plaintiff Minors.

139.    The damages of Plaintiff Mothers and Plaintiff Minors, collectively, are in an amount as yet to be determined, but in no event less than TWENTY MILLION DOLLARS

($20,000,000). Defendants are jointly and severally liable to Plaintiff Mothers and Plaintiff Minors for the damages suffered. Thus, they are liable to Plaintiff Mothers and Plaintiff Minors, jointly and severally, in an amount as yet to be determined, but in no event less than TWENTY MILLION DOLLARS ($20,000,000).

Habeas Corpus

140.    Plaintiffs repeat and reallege paragraphs 1-144 above as if fully set forth herein.

141.    As a result of the actions of Defendants, Plaintiff Minors are currently detained apart from the Plaintiff Mothers. Such detention is Unconstitutional.

142.    Defendants' continuing detention of Plaintiff Minors contravenes Section 1 of Amendment 13 to the United States Constitution, which provides, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

143.    Plaintiffs are entitled to a writ of habeas corpus requiring that the Plaintiff Minors be released from unlawful detention and produced in court for the appropriate, legal resolution of the relevant custody issues.

Attorney's Fees

144.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 to 148 above as if set forth at length herein.

145.    Pursuant to 42 U.S.C. § 1988, the Equal Access to Justice Act (EAJA), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, Plaintiffs are entitled to an award of their reasonable attorney's fees incurred in prosecuting the within action from Defendants.

Prayer for Relief

WHEREFORE, Plaintiffs pray that the Court grant the following relief:

A.    Assume jurisdiction over this matter;

B.    Expedite consideration of this matter pursuant to 28 U.S.C. § 1657 because it is, in part, an action brought under chapter 153 (habeas corpus) of Title 28;

C.    Grant Plaintiff Mothers a writ of habeas corpus directing the Defendants to immediately release the Plaintiff Minors from custody, and to produce them before the Court within three (3) days for further proceedings, or in the alternative to issue an order pursuant to 28 U.S.C. § 2243 directing Defendants to show cause why such a writ of habeas corpus should not be granted;

D.    Issue a declaratory judgment, pursuant to 28 U.S.C. § 2201 *et seq.*, to the effect that the Defendants' actions were illegal and violative of Plaintiffs' right to due process of the law and, in the case of Plaintiffs Amato, Orr and Funk, to equal protection of the laws;

E.    Issue an injunction barring Defendants from continuing their illegal acts, as aforesaid;

F.    Award Plaintiffs Amato, Orr, Funk, C.B., O.O-K., C.J.K. and J.M.K. damages in an amount yet to be determined, but in no event less than $20,000,000, with relevant Defendants jointly and severally liable therefor;

G.    Award Plaintiff Gordon damages in an amount yet to be determined, but in no event less than $1,000,000, with relevant Defendants jointly and severally liable therefor;

H.    Award Petitioners attorneys fees and costs under 42 U.S.C. § 1988, the Equal Access to Justice Act (EAJA), as amended, 5 U.S.C. § 504 and 28 U.S.C. § 2412, and on any other basis justified under law; and

I.    Grant any other and further relief as the Court shall deem just and proper.

## VERIFICATION

The undersigned are Plaintiffs in the within matter and have personal knowledge of the facts and circumstances therein. Each of the undersigned hereby verifies that the factual statements made in the foregoing Verified Complaint are true and correct to the best of her knowledge; as to any statements of law, each of us believes them to be correct.

DATED:        October  30 , 2017

DIANE C DARLING
Notary Public - State of New York
NO. 01DA6242090
Qualified in Ulster County
My Commission Expires _____

_____
FRANCES J. AMATO
Plaintiff


_____
ALANA ORR
Plaintiff


_____
GINA FUNK
Plaintiff


_____
JILLIAN GORDON LCSW-R
Plaintiff

## VERIFICATION

The undersigned are Plaintiffs in the within matter and have personal knowledge of the facts and circumstances therein. Each of the undersigned hereby verifies that the factual statements made in the foregoing Verified Complaint are true and correct to the best of her knowledge; as to any statements of law, each of us believes them to be correct.

DATED:   ~~September~~ October _____, 2017

FRANCES J. AMATO
Plaintiff

10/2/17

KEN L. WILLIAMS
Notary Public, State of New York
Reg. No. 01MI6205094
Qualified in Ulster County
Commission Expires June 30, 20 21

ALANA ORR
Plaintiff

GEORGENE G. FREDERICKS
Notary Public, State of New York
County of Ulster
Commission Expires June 30, 2019
Notary Registration No. 47

10/3/17

GINA FUNK
Plaintiff

GEORGENE G. FREDERICKS
Notary Public, State of New York
County of Ulster
Commission Expires June 30, 2019
Notary Registration No. 47

10/3/17

JILLIAN GORDON LCSWR
Plaintiff

The undersigned are Plaintiffs in the within matter and have personal knowledge of the facts and circumstances therein. Each of the undersigned hereby declares under penalty of perjury that the factual statements made in the foregoing Claim are true and correct to the best of her knowledge; as to any statements of law, each Plaintiff believes them to be correct.

Executed this __2__ Day of ~~September,~~ 2017
Oct.

KERI L. WILLIAMS
Notary Public, State of New York
Reg. No. 01WI8205024
Qualified in Ulster County
Commission Expires June 20, 20 21

_____
FRANCES J. AMATO
Plaintiff

Executed this __2nd__ Day of ~~September,~~ 2017
October

KERI L. WILLIAMS
Notary Public, State of New York
Reg. No. 01WI8205024
Qualified in Ulster County
Commission Expires June 20, 20 21

_____
ALANA ORR
Plaintiff

Executed this __3rd__ Day of ~~September,~~ 2017
october

GEORGENE G. FREDERICKS
Notary Public, State of New York
County of Ulster
Commission Expires June 30, 2019
Notary Registration No. 4796692

_____
GINA FUNK
Plaintiff

Executed this __3rd__ Day of ~~September,~~ 2017
October

GEORGENE G. FREDERICKS
Notary Public, State of New York
County of Ulster
Commission Expires June 30, 2019
Notary Registration No. 4796692

_____
JILLIAN GORDON, LCSWR
Plaintiff